# EXHIBIT A

# TECHNICAL CONSULTING SERVICES AGREEMENT

## PARTIES

This *Agreement* (*Agreement*) is made by and between CPC Plastics, Inc. (*Consultant*), 770 Main Street, West Warwick, RI 02893 and Bryanco (*Client*), 16212 Clinton Rd., Springport, MI 49284.

## PURPOSE

The purpose of this *Agreement* is to reduce to writing, the terms, and conditions of the technical consulting *Services* requested by the *Client* of the *Consultant* and to enumerate the scope of such *Services* and the financial remuneration payable to the *Consultant* for these *Services* by the *Client*.

## SCOPE OF SERVICES

The scope of the *Agreement* expected of the *Consultant* by the *Client* is enumerated in the attached **Appendix A** and expressly agreed to by both parties that:

- The *Consultant* will render *Agreement* to a designated representative (Representative) of the *Client* and will submit his reports, computer printouts, and findings (Report) to the Representative.
- The *Agreement* will include the preparation of Reports, in some cases, prepared using the technical data and assumptions made by the *Client or Representatives* acting on behalf of the *Client*. In these particular cases, the *Client* hereby relinquishes the *Consultant* from any liabilities resulting from the use of the *Client's* "prior art".
- The *Consultant* will prepare any Reports on the *Consultant's* computer equipment. The *Consultant* will have the right to retain original work performed for archival and reference purposes. The *Client* will be entitled to receive paper copies of the Reports.

## INVOICING TERMS AND CONDITIONS

The terms and conditions pertaining to the financial compensation payable to the *Consultant* by the *Client* is enumerated in **Appendix B** and expressly understood and agreed by both parties that:

- Invoices presented by the *Consultant* are **Due on Receipt**. Furthermore, the *Client* agrees that all overdue invoices are subject to a finance charge, which will be the maximum percentage rate allowed by federal, state, or local laws.
- The *Client* will also be responsible for any, and all, reasonable collection related costs (for example, attorney fees, collection agency fees, court fees, etc.) resulting from non-payment of the *Consultant's* invoices.
- In the event of a *Client* contested invoiced line item charge, the *Client* hereby agrees to provide the *Consultant* a written statement containing the description, amount, and reason of contest, within five (5) business days of receiving said invoice.
- In the same way, *Consultant* agrees to investigate the accuracy and make corrections, if any are required, within five (5) business days of receiving the *Client's* statement of contest. Furthermore, the *Client* agrees to pay any uncontested charges to the *Consultant* immediately.

## BILLABLE AND NON-BILLABLE TIME

During the course of this *Agreement*, due to increased usage or requests outside the scope of *Agreement* identified in **Appendix A**, the *Consultant's* time commitment is expected to be greater than hereby agreed upon, such additional time commitment will be bound by the terms and conditions mutually agreed to at that time.

It is expressly understood and agreed by both the *Client* and *Consultant* that the *Consultant's* time required to fulfill the scope of *Agreement*, enumerated in **Appendix A**, are described accordingly as:

**Billable Time:**

- Actual performance of duties, as required to fulfill the Scope of *Agreement* enumerated in **Appendix A**, at the *Client's* premises, or elsewhere.
- Time spent on meetings, research, reviews, correspondence, telephone conferences, computer work, etc., as required to fulfill the Scope of *Agreement* enumerated in **Appendix A**.

**EXHIBIT A**

- Total time traveling, to and from the *Consultant*'s office(s), to the *Client's* facility or to third party location(s) as required to fulfill the Scope of *Agreement* enumerated in **Appendix A.**

**Non-billable time:**

- Time spent performing accounts payables and receivables tasks and responding to billing inquiries made by the *Client* or correcting errors made by the *Consultant* is not charged to the *Client*.

## REIMBURSABLE EXPENSES

The *Client* will reimburse any reasonable and necessary out of pocket expenses incurred by the *Consultant* as required to fulfill the Scope of *Agreement* enumerated in **Appendix A**, to the *Consultant* immediately upon receiving an invoice detailing out of pocket expenditures, including but not limited to:

**Travel Expenses**

- Air, Rail, and/or Sea Transportation Charges*
- Parking and Tolls
- Lodging and Meals
- Taxi, Bus, and/or Limousine
- Mileage (0.41/mile)
- Telephone and/or Web Access
- All other associated expenses

**Project Expenses**

- Lab and Testing Fees
- Computer and Publication Research
- Audio and Video Media
- Demonstrative Aids
- Transcriptions
- Colleague's Opinions
- All other associated expenses

**Administrative Expenses**

- Postage and Delivery
- Telephone Calls and Faxes
- Printing and Reproduction
- Film and Photo Processing
- Equipment and Evidence Storage
- All other associated expenses

## AGREEMENT TERMS AND CONDITIONS

*Client's* proprietary information will be treated as confidential by the *Consultant* and will not be released to third parties without the *Client*'s permission, except as required by the operation of law. This *Agreement* will come into effect upon execution by both parties and will remain in effect for the period(s) enumerated in **Appendix A**. This *Agreement* will automatically terminate unless renewed by both parties in writing two weeks prior to the expiration date of the *Agreement*. In the event of a non-payment of invoice by *Client*, the *Consultant* may suspend providing further *Agreement*, in addition to pursuing other legal remedies.

In furtherance of the *Agreement* provided by the *Consultant*, the *Client* and its affiliates agree to provide the *Consultant* with information they consider true and reliable. It will remain the *Client's* responsibility to review and verify the *Agreement* performed by the *Consultant*, based on the information provided by the *Client* and/or its affiliates.

The *Consultant* agrees to correct any errors or omissions on part of the *Consultant* at no extra charge to the Client. Other than that, the *Consultant* does not make any representations or warranties as to the outcome of events based on the *Services* performed by the *Consultant*.

The *Client*, therefore, indemnifies the *Consultant* against all damages, costs and expenses related to any claim of liability arising from or related to the performance of this *Agreement*, and will consider any legal action against the *Consultant*, as a result of the *Consultant's* association with the *Client*, whether now or in the future, whether direct or indirect, as if it were against the *Client*, and the *Client* will vigorously pursue all available remedies to resolve the dispute at own expense.

---

*Air, Train, or similar modes of commercial transportation require Business Class ticketing. In the event that Business Class accommodations are unavailable, tickets will be booked at the most appropriate rate available. If a executive assistant is required to travel with the *Consultant*, the *Client* will pay actual travel expenses only.

Any major dispute over $5,000 (Five Thousand dollars) relating to the interpretation or performance of this *Agreement* will be resolved at the request of either party through binding arbitration. Arbitration will be conducted in Kent County, State of Rhode Island, in accordance with the then-existing rules of the American Arbitration Association. Any state or federal court having jurisdiction may enter judgment upon any award by the arbitrators.

The *Consultant* and the *Client* intend that this *Agreement* to arbitrate be irrevocable and self-executing, and that the issue of whether a claim or dispute between the parties to this *Agreement* is within the scope of this arbitration clause or subject to arbitration is to be decided by the arbitrators. The prevailing party will be reimbursed all reasonable costs and attorney fees associated with such action by the non-prevailing party.

## JURISDICTION

The laws of the State of Rhode Island will govern This *Agreement*.

## EXECUTION

This *Agreement* signed in the city of Springport, State of Michigan, this Tuesday, August 09, 2005 and supersedes any other *Agreement*, if any, prior to this date.

| | |
|---|---|
| Clinton P. Cowen | *Client* Representative |
| CPC Plastics, Inc. | Bryanco |
| 770 Main Street | 16212 Clinton Rd. |
| West Warwick, RI 02893 | Springport, MI49284 |

## Appendix A

The scope of *Services* to be provided by the *Consultant* to the *Client* is described as, if initialed, expressly understood, and agreed:

- The *Consultant* will provide the *Client* with the Services outlined within the *Consultant's* attached Pet Outhouse Tooling Project Proposal.

  CR XB

- Technical consulting *Services* as directed by the *Client* or their Representatives.

  CR XB

## Appendix B

The financial compensation payable to the *Consultant* by the *Client* for the *Services* is described as, and if initialed, expressly understood and agreed:

- The *Client* will adhere to the terms contained within the *Consultant's* attached Pet Outhouse Tooling Project Proposal.

  CR XB

- The *Client's* retainer of USD$2000.00, previously held in conjunction with Bryanco's Pet Outhouse Design Project will be transferred and applied to satisfy the retainer requirements for Bryanco's Pet Outhouse Tooling Project, and held in escrow. This retainer remains in CPC's possession and will be applied to the final invoice of the Pet Outhouse Tooling Project.

  CR XB

Prepared Exclusively For Bryanco By

CPC Plastics²

# Pet Outhouse Tooling Project Proposal

Prepared By: Donald J. Lesieur

# Pet Outhouse Tooling Proposal

## Purpose:

Bryanco is setting up distribution and assembly facilities for their Pet Outhouse Tooling Proposal. CPC Plastics, Inc., herein CPC, will utilize the CAD design files and/or data generated as part of our Pet Outhouse Design Project Proposal, which was developed for Bryanco by CPC earlier this year.

## Scope:

CPC will examine Bryanco's production requirements and design the most appropriate tooling that both meets Bryanco's production needs and quality requirements. In full view of CPC's tooling design, CPC will qualify and source an offshore vendor capable of meeting the project requirements, and oversee construction of Bryanco's tool(s) to ensure engineering compliance and quality.

Upon delivery and acceptance of First Article(s), CPC will qualify the tooling and commission a run of at least 5000 units per tool. Based on this pre-production run CPC will establish and document the baseline processing parameters so as to mitigate lead times and installation issues during start-up at a vendor TBD and qualified by CPC, local to Bryanco.

Subsequent to the mold qualification process and pre-production run off of 5000 units, CPC will qualify at least three (3) vendors, in the Great Lakes region, which are determined to have the capacity, capability, and competence required to manufacture Bryanco's Pet Outhouse products.

## Required Articles:

Preliminary articles required by CPC Plastics, Inc. include, but are not limited to, the following:

### Material:

- CPC will qualify and specify the material to be used in the manufacture of Bryanco's Pet Outhouse product.

## Design:

- CPC will provide the necessary design files, drawings, and/or media required to construct the tooling to be used in the manufacture of Bryanco's Pet Outhouse product.

## Process:

- CPC will identify and qualify the most appropriate processing methods and/or techniques to be used in the manufacture of Bryanco's Pet Outhouse product.

## Equipment:

- CPC will identify and qualify the most appropriate equipment to be used in the manufacture of Bryanco's Pet Outhouse product.

## Samples:

**A minimum of five (5):**

- N/A

## Tooling:

**A minimum of five (5):**

- N/A

# Estimated Time to Completion:

The Estimated Time to Completion of the pre-production run of 5000 units is approximately sixteen (16) to twenty-one (21) weeks, from the date that CPC receives a Purchase Order (P.O.) for the total project cost(s) as identified in the following "Cost to Complete" section of this proposal.

The Estimated Time to Completion of the project in its entirety is approximately six (6) to eight (8) weeks from the delivery date of the 5000 pre-production units.




## Cost to Complete:

The cost to complete this project is USD$420,000.00. This cost includes the design and construction of each tool required to manufacture the Bryanco Pet Outhouse Assembly, FOB charges, initial pre-production run of 5000 units, mold qualification, vendor qualification, and implementation and/or start-up assistance.

## Terms and Conditions:

CPC Plastics, Inc. retains Bryanco's initial retainer fee of USD$2000.00, received in conjunction with the Pet Outhouse Design Project, and will apply this retainer to cover the design services facet of this proposal. This retainer will be held in escrow and applied to the final invoice for this project.

Standard industry terms for the tangible facets of this project, in this case the tooling and "out of pocket" expenses, requires: USD$150,000.00 with P.O., USD$60,000.00 Net 30 Days from issuance of P.O., 25% upon acceptance of First Article, Balance due at time of local tool delivery.

Additionally, we request a letter of credit drafted to CPC Plastics, Inc. from Bryanco's Financial Institution, which contains language commensurate with the aforementioned terms.

CPC Plastics®

Post-it® Fax Note 7671

| | | | |
|---|---|---|---|
| To Ken Bryan | | Date 10-12-05 | # of pages ▸ 3 |
| Co./Dept. Bryanco | | From Don Lesieur | |
| Phone # 1-517-857-2000 | | Co. CPC Plastics Inc | |
| Fax # Same | | Phone # 866.833.0830 | |
| | | Fax # 401.828.0840 | |

# Pet Outhouse Proposal Addendum

**Submitted on:** August 12, 2005
**Submitted By:** CPC Plastics, Inc., 770 Main Street, West Warwick, RI 02893

Friday, August 12, 2005

Bryanco
Attn: Mr. Ken Bryan
1612 Clinton Road
Springport, MI 49284

**Re:** Pet Outhouse Tooling Proposal Addendum

This addendum is in response to the clarifications requested by Mr. Ken Bryan dba/Bryanco herein Bryanco to CPC Plastics, Inc herein CPC via telephone on the date August 11, 2005.

The first item for clarification to Bryanco is to stipulate that the Proposal is a firm fixed price of USD $420,000 as stated on page 5 in the Cost to Complete section of the Pet Outhouse Tooling Proposal sent on August 10, 2005. In the Technical Consulting Services Agreement under sub-section Reimbursable Expenses on page 8 the expenses outlined are all inclusive and no additional charges above and beyond the USD $420,000 will be incurred.

X The second item for clarification to Bryanco relating to the Pet Outhouse Tooling Proposal is a Letter of Credit to outline the guarantees made to Bryanco by a financial institution to finance a portion of this project. This will encompass a statement of availability of funding to complete the project beyond any self-financing Bryanco will provide. We require this statement to protect both parties and any investors in the event of cancellation beyond the control of CPC. This will document that Bryanco will have adequate finances to cover expenses incurred up to a specified milestone. CPC has agreed to modify the terms noted on page 5 in the Terms and Conditions section to require Bryanco to submit documentation when any financial institution funding is utilized. Bryanco has stated that it will send this documentation with the second payment of USD $60,000 30 days after issuance of P.O.

Signed and Agreed upon by,

Donald J. Lesieur
Product Development Engineer
CPC Plastics, Inc.

Ken Bryan
President
Bryanco