UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CPC PLASTICS, INC., Plaintiff | ) | |
| v. | ) | C.A. No. 06-452/S |
| KENNETH E. BRYAN, Alias, d/b/a BRYANCO and BRYANCO, LLC, Defendants | ) | |
| v. | ) | |
| CLINTON P. COWEN, Third-party Defendant | ) | |

**DEFENDANTS' PRETRIAL MEMORANDUM**

## I. Procedural History and Statement of the Facts

### A. Procedural History

This case stems from a lawsuit filed by the Plaintiff, CPC Plastics, Inc. ("CPC Plastics") in the Rhode Island Superior Court, County of Kent, on or about September 18, 2006. CPC Plastics brought the suit against the Defendants, Kenneth E. Bryan, Alias, d/b/a Bryanco and Bryanco, LLC alleging claims for breach of contract and collection for payments allegedly owed to the Plaintiff stemming from a "Technical Consulting Services Agreement" entered into between the parties. The case was removed to Federal Court on October 13, 2006. On November 15, 2006, Bryanco filed an answer to the complaint and also asserted a counterclaim against CPC Plastics for breach of contract and a third-party complaint against the owner of CPC Plastics, Clinton P. Cowen, for fraud and seeking to pierce the corporate veil of CPC Plastics.

On August 7, 2007, Bryanco filed a motion to dismiss the claims brought by CPC Plastics as a result of Plaintiff's flagrant failure to provide discovery or to comply with the Court's order compelling discovery. Plaintiff failed to respond to discovery despite express orders of the Court dated July 24, 2007 and July 31, 2007. On April 3, 2008 Magistrate Judge

David L. Martin granted the motion to dismiss and the Court adopted this decision on April 24, 2008. As such, the only triable issues that remain in this matter are the claims by Ken Bryan and Bryanco against CPC Plastics on the counterclaim and third-party complaint.

However, due to plaintiff's continued failure to comply with this Court's Order compelling discovery, which is essential to Kenneth Bryan and Bryanco's counterclaim and third-party complaint, defendants/counterclaimants/third-party plaintiffs have filed a motion seeking default judgment on those claims contemporaneously with the filing of this Pre-trial Memorandum. If that Motion for Default is granted, much of the material contained in this Pre-trial Memorandum will be rendered moot.

**B. Statement of Facts**

In late 2004 and early 2005, Kenneth Bryan and his wife Sherry Bryan began developing a concept for the design, manufacture and sale of a pet outhouse to be used by small to medium size dogs. In March of 2005, after searching for a plastic manufacturing company to assist with the design and manufacturing of the pet outhouse product, the Bryans contacted CPC Plastics. In April of 2005, the Bryans submitted hand drawn pictures of their product "the original Doggy Poo House" to CPC Plastics for product design services. On May 13, 2005, a patent request was filed for "the original Doggy Poo House" with the United States Patent and Trademark Office. On June 9, 2005, Bryanco, LLC entered into its first contract with CPC Plastics, Inc. for the purpose of providing Bryanco with product design services, CAD files, material identification and/or specifications to manufacture the pet outhouse project.

In August, 2005, Bryanco entered into the "Technical Consulting Services Agreement" with CPC Plastics wherein CPC Plastics agreed to provide tooling, an initial product run of 5,000 units, and, the qualifying of an injection molding facility local to the Great Lakes Region for Bryanco's product "the Original Doggie Poo House."

Pursuant to the Technical Consulting Services Agreement, Bryanco agreed to pay CPC Plastics, Inc. a total of $420,000 to be paid in stages as follows: "150,000 with P.O., $60,000 net thirty days from issuance of P.O., 25% upon acceptance of First Article, Balance due at time of local tool delivery."

The "Pet Outhouse Tooling Project Proposal" which is incorporated into the Technical Consulting Services Agreement contains the following relevant language regarding the estimated time to completion:

> The Estimate Time to Completion of the pre-production run of 5,000 units is approximately sixteen (16) to twenty-one (21) weeks, from the date that CPC receives a purchase order (PO) for the total project cost(s) as identified in the following "cost to complete" section of this proposal.
>
> The Estimated Time to Completion of the project in its entirety is approximately six (6) to eight (8) weeks from the delivery date of the 5,000 pre-production units.

The Pet Outhouse Tooling Project Proposal which is incorporated into the Technical Consulting Services Agreement contains the following relevant language regarding the cost to complete the project:

> The cost to complete this project is USD $420,000.00. This cost includes the design and construction of each tool required to manufacture the Bryanco Pet Outhouse Assembly, FOB charges, initial pre-production run of 5,000 units, mold qualification, vendor qualification, and implementation and/or start-up assistance.

Pursuant to the Terms of the Agreement, Bryanco issued payment to CPC Plastics, Inc. in the amount of $150,000 at or around the time that the parties entered into the Purchase Order, and, Bryanco made an additional payment in the amount of $60,000 on or about thirty days from the issuance of the initial Purchase Order. Bryanco's next payment, in the amount of $105,000.00, is not due until the approval and acceptance of the First Article, and the balance of the contract price is not due until the time of local tool delivery. To date, CPC has failed to

provide an acceptable First Article product to Bryanco and, CPC has not fulfilled any of the conditions precedent necessary for any additional payments under the contract.

In addition to failing to provide Bryanco with an acceptable "First Article", CPC further breached its contractual obligations under the Technical Consulting Services Agreement by specifically notifying Bryanco that CPC will not comply with its contractual obligation to provide Bryanco with 5,000 units. CPC Plastics, Inc.'s repeated refusals to provide Bryanco with the 5,000 units specified in the contract constitute an anticipatory repudiation of the contract and/or a breach of the contract.

CPC Plastics, Inc. has further breached its contractual obligations to Bryanco by failing to comply with CPC's estimated time of completion which, as set forth in the contract, was estimated to take sixteen (16) to twenty-one (21) weeks, from the date that CPC received a Purchase Order until completion of the pre-production run of 5,000 units, and approximately 6 to 8 weeks of the delivery date of the 5,000 pre-production units until completion of the entire project.

To date, nearly three years have passed since Bryanco entered into the Technical Consulting Services Agreement with CPC Plastics, Inc., and CPC Plastics, Inc. has yet to provide Bryanco with an acceptable First Article.

Bryanco, LLC and Kenneth E. Bryan have been severely damaged as a result of CPC Plastics, Inc.'s numerous and on-going breaches of contract and/or anticipatory repudiation of the contract.

In addition to the monies provided to CPC Plastics, Inc. for the Technical Consulting Services Agreement as well as the previous pet outhouse design project, Bryanco has significantly changed its position and relied to its detriment on CPC's assurances that it would comply with its contractual obligations. These material changes in position include but are not

limited to the attendance at trade shows, the purchase of equipment, advertising, the construction of a building to store inventory, interest, lost wages and income and lost profits, said damages which currently exceed $500,000 and continue to grow with time.

Third-party defendant Clinton P. Cowen is the principal owner and alter ego of CPC Plastics, Inc. Mr. Cowen has wrongfully used funds paid to CPC Plastics, Inc. by Bryanco, LLC for uses other than the execution and diligent completion of the Technical Consulting Services Agreement between CPC Plastics, Inc. and Bryanco, LLC.

Mr. Cowen has been instrumental in directing the actions of CPC Plastics, Inc. in its dealings with Bryanco, LLC, and Mr. Cowen made material misrepresentations of fact and gave repeated assurances to Bryanco, LLC and Kenneth E. Bryan regarding CPC's ability and willingness to comply with the terms of the Technical Consulting Services Agreement between CPC Plastics, Inc. and Bryanco, LLC. in order to induce Bryanco to enter the agreement and in order to induce Bryanco to continue to do business with CPC. However, discovery has revealed that neither Mr. Cowen nor CPC were capable of handling a project of this magnitude and, more importantly, Mr. Cowen knew that he would not permit CPC to provide the 5,000 units promised in the contract.

Bryanco, LLC and Kenneth E. Bryan relied to their detriment upon Clinton Cowen's material misrepresentations of fact regarding CPC Plastics, Inc.'s willingness and ability to comply with the terms of the Technical Consulting Services Agreement between CPC Plastics, Inc. and Bryanco. Bryanco and Kenneth E. Bryan have been damaged and continue to be damaged as a result of Clinton Cowen's fraudulent misrepresentations of fact, in an amount in excess of $500,000, and, they seek compensatory and punitive damages as a result of Clinton Cowen's intentional misrepresentations of material facts.

Furthermore, Clinton P. Cowen's actions as described above in directing the actions of

CPC Plastics, Inc. and in acting as the alter ego of CPC Plastics, Inc. are such that Clinton P. Cowen is personally liable for the actions of CPC Plastics, Inc. and Third-Party Plaintiffs Bryanco, LLC and Kenneth E. Bryan should be permitted to pierce the corporate veil of CPC Plastics, Inc. to the same extent that Third-Party Plaintiffs are entitled to recover against CPC Plastics, Inc. on their Counterclaim.

## II. What is Expected to be Proven in Support of Claims/Defense of Case, with Indication of Witnesses and Brief Summary as to Their Testimony

Since this Court has dismissed the Plaintiff's claims with prejudice, the Plaintiff's claims are moot. Since Kenneth Bryan and Bryanco have now also moved for default judgment as to their counterclaim and third-party complaint, the remaining issues in this case may be rendered moot in the event that the Court grants the pending motion for default judgment. However, in the event that defendants/counterclaimants/third-party plaintiffs Kenneth E. Bryan and Bryanco go forward on their counterclaim and third-party complaint, the testimony submitted at the time of trial will prove the facts set forth in the pleadings and in the Statement of Facts set forth in this Pre-trial Memorandum. In addition, defendants Kenneth Bryan and Bryanco will submit evidence and testimony supporting each of the elements necessary to establish their claims for breach of contract against CPC and for fraud and for piercing the corporate veil in regards to third-party defendant Clinton Cowen.

**Witness List:**

1. Kenneth E. Bryan: Mr. Bryan will testify regarding the development of the product, his dealings with Clinton Cowen and the individuals at CPC, the numerous misrepresentations of fact on the part of Clinton Cowen and other individuals at CPC, and he will also testify as to the amount and nature of damages sustained.

2. Sherry Bryan: Sherry Bryan is not a party to this case. However, she is Ken Bryan's wife and was intimately involved in this project. She too will be testifying regarding the

product at issue, and the dealings with Clinton Cowen and CPC. She will also be testifying as to damages.

3. Daniel Chu: Mr. Chu contracted with CPC Plastics to create the molds necessary for running the product. He will testify as to Clinton Cowen's financial dealings, incompetency, inability to comply with the terms of the contract with Bryanco, and as to Mr. Cowen's financial dealings with Daniel Chu which, made it difficult if not impossible for CPC Plastics to ever adequately complete the contract with Bryanco.

4. Michael Kutas: Michael Kutas will testify regarding attempted assurances sought by Bryanco that CPC was willing to complete project, Bryanco's willingness to make additional payments under contract, CPC's refusal to complete project pursuant to terms of the contract and specific refusal to provide 5,000 units as set forth in contract.

5. Richard W. Nicholson: Richard W. Nicholson will testify that CPC was only going to produce 500 units in total.

6. Clinton Cowen: Clinton Cowen will testify as to his dealings with Bryanco and Ken Bryan. He will also testify that despite agreeing to provide Bryanco with 5,000 units, that he ultimately decided that CPC Plastics would not provide the 5,000 units promised in the contract. He will also testify as to all the matters set forth in his deposition.

7. Donald J. Lesieur: Mr. Lesieur will testify regarding his involvement with the project. He will also testify regarding the quality of the product, his knowledge in the industry and as to all other matters set forth in his deposition.

8. Richard W. Hague: Mr. Hague will testify regarding his knowledge of the project, his knowledge of the accounting and financial practices of CPC and Clinton Cowen and he will also testify regarding all of the matters set forth in his deposition.

Clinton Cowen, Donald Lesieur and Richard Hague will be called as hostile witnesses.

All of the foregoing parties will be testifying as fact witnesses regarding their knowledge of the project and the relationship between the parties. However, to the extent that these individuals have specialized knowledge regarding the industry at issue, they may be expressing some opinion testimony.

## III. Supporting Law with Citations of Authority

### A. Breach of Contract and Anticipatory Repudiation

In Rhode Island, a breach of contract claim is established when the plaintiff demonstrates and proves a "violation of a contractual obligation, either by failing to perform one's promise or by interfering with another party's performance." *Demicco v. Medical Associates of Rhode Island, Inc., et al.*, No 99-2512 (D. R.I. filed July 31, 2000).

In order to give rise to an anticipatory breach of contract, the defendant's refusal to perform must have been positive and unconditional. See, Williston, Contracts § 1322 (3d ed. Jaeger 1968). See also *Thompson v. Thompson,* 495 A.2d 678, 682 (R.I. 1985) (citing Williston; Farnsworth, Contracts § 8.21 at 633-34 (repudiation is manifestation by one party to the other that first party cannot or will not perform). "Usually, when there is an anticipatory repudiation, this gives rise to a cause of action for damages for total breach. *Eagle Cornice Co. v. Mast Construction, Inc.* (June 3, 1987), 1987 R.I. Super. LEXIS 190. See also, Farnsworth, supra, § 8.20 at 630.

### B. Fraud

The essential elements of a fraud claim are: "(1) the defendant knowingly made a false representation, (2) intending thereby to induce the plaintiffs to rely on it, (3) the plaintiffs justifiably did rely on it, and (4) that plaintiffs were damaged by that reliance." *Rhode Island Depositors Economic Protection Corporation v. Fleet Financial Group, Inc.,* C.A. PC 96-5668, November 2, 1996 (citing *Cliftex Clothing Co., v. DiSanto,* 88 R.I. 338, 344, 148 A.2d 273, 275,

(1959); *Travers v. Spidell,* 682 A.2d 471, 472-73 (1996). There must be some evidence to support each of the elements of the fraud claim. *Id.*

**C. Piercing the Corporate Veil**

Although the criteria for piercing the corporate veil vary with the particular circumstances of each case, one overriding factor is omnipresent:

> The corporate entity should be disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporation as a separate entity. *R & B Electric Co. v. Amco Construction Co.,* 471 A. 2d 1351, 1354 (R.R. 1984).

Such facts may be present, when the corporate entity is used to protect fraud. *R & B Electric Co.,* 471 A. 2d at 1354. The veil of the corporate entity may be pierced when it is demonstrated that the person or entity at issue dominated the finances, policies and practices of the corporation. *Miller v. Dixon Industries Corporation*, 513 A. 2d 597, 604 (R.I. 1986). The evidence in this case will establish that Clinton Cowen so substantially participated in, directed and controlled the finances and operations and management of CPC that it will be inequitable to permit him to hide behind the corporate entity of CPC Plastics, Inc. On the contrary, Mr. Cowen's fraudulent conduct and the manner in which he misled Ken Bryan and Bryanco despite his knowledge that CPC did not have the ability to carry out the contract in a timely manner and his refusal to permit CPC to comply with the contract by refusing to provide the 5,000 units set forth in the contract provides a basis for piercing the corporate veil.

**IV. Exhibit List**

Each of the following exhibits will establish the facts set forth above:

| | | |
|---|---|---|
| A. | 01-023 | Letter from Clinton Cowen and contract documents |
| | 024 | CPC invoice |
| | 025 | E-mail from Lesieur |

| | |
|---|---|
| 026 | E-mail from Lesieur |
| 027 | Computer animated sample photograph |
| 028-033 | E-mail from Richard Hague with design files |
| 034-037 | E-mail from Don Lesieur and Ken and Sherry Bryan regarding problems with model |
| 040-43 | E-mail from Don Lesieur and drawings |
| 44-45 | E-mail from CPC with invoice |
| 46 | E-mail from Bryan |
| 47-48 | E-mail from Lesieur and drawing |
| 49 | E-mail from Clinton Cowen |
| 50 | E-mail from Clinton Cowen |
| 51-52 | E-mail exchange between Lesieur and Ken and Sherry Bryan |
| 53-54 | E-mail exchange between Don Lesieur, Clinton Cowen and Ken and Sherry Bryan |
| 55-63 | E-mail exchange between Cohen, Lesieur and Bryans |
| 64 | Drawing of model |
| 65 | Photograph of prototype with defects |
| 66-72 | E-mail exchange between Hague, Cowen and Ken and Sherry Bryan |
| 73-74 | Letter from Michael Kutas to Richard Nicholson |
| 75-77 | E-mail exchange between Cowen, Bryans, and Mike Kutas |
| 78 | Fax cover page |
| 79 | Letter from Attorney Richard Nicholson providing that CPC would only produce 500 units in total |
| 80 | Letter from CPC with estimated times of completion in setting forth that CPC would only produce 500 units as opposed to the 5,000 units set forth in the contract. |

| | |
|---|---|
| 82 | Letter from Attorney Richard Nicholson to Michael Kutas |
| 83 | Letter from CPC Plastics to Ken Bryan confirming that CPC would only provide 500 units as opposed to the 5,000 set forth in the contract. |
| 84-92 | E-mail exchange between Cowen and Ken and Sherry Bryan |
| 99 | Fax cover sheet from Bryanco |
| 100-102 | "Doggy Poo House" first article acceptance form noting rejection of product and numerous changes needed prior to obtaining an acceptable article. |

B. Additional e-mail correspondence between Bryans and CPC/Cowen;

C. Invoices

D. Receipts, cancelled checks and additional documentary proof establishing costs associated with project and damages incurred.

E. Project design drawings

F. Photographs of model

G. Federal Express documentation regarding shipment of model

H. Letter from Michael Kutas to Clinton Cowen

I. E-mail and correspondence with Daniel Chu.

J. Sample model of product

## V. Jury Instructions

Filed separately

## VI. Probable Length of Trial

Two days.

Respectfully submitted,

/s/ Timothy M. Bliss
Brooks R. Magratten, Esq., #3585
Timothy M. Bliss, Esq., #6228
VETTER & WHITE
Attorneys for Defendants and Third-party Plaintiffs
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
tbliss@vetterandwhite.com

/s/ Daniel A. Richards
Daniel A. Richards (0059478)
Weston Hurd LLP
Attorneys for Defendants and Third-party Plaintiffs
The Tower at Erieview
1301 East 9th Street - Suite 1900
Cleveland, Ohio 44114-1862
(216) 687-3256
(216) 621-8369 FAX
drichards@westonhurd.com

Dated: May 23, 2008

CERTIFICATE OF SERVICE

To:

Gerard M. DeCelles, Esq.
1536 Westminster Street
Providence, RI 02909

I hereby certify that I electronically filed the within Pretrial Memorandum on May 23, 2008. The memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Timothy M. Bliss